1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

12  In re: BETSEY WARREN            NO. CIV. S-08-912 FCD
    LEBBOS,
13          Debtor,
    _____/
14  BETSEY WARREN LEBBOS,
    JASON GOLD, THOMAS
15  CARTER,                         MEMORANDUM AND ORDER

16          Appellants,

17      v.

18  LINDA SCHUETTE,

19          Appellee.
    _____/
20

21                       ----oo0oo----

22       This matter is before the court on pro se appellants Betsey

23  Warren Lebbos ("Lebbos"), Jason P. Gold ("Gold") and Thomas

24  Carter's ("Carter") (collectively, "appellants") appeal of the

25  bankruptcy court's entry of default judgment against them as a

26  terminating sanction for appellants' discovery abuses.  (Docket

27  #s 31, 35, 37, 38.)  Pursuant to 28 U.S.C. § 158(a), appellants

28

1

elected appeal to this court.

The court has reviewed the parties' briefs and the underlying record, as contained within the excerpts of record submitted by both parties, and by this order, issues its decision AFFIRMING the bankruptcy court's entry of default judgment.  This court cannot find that the bankruptcy court abused its discretion in entering default judgment against appellants as a sanction for discovery abuses.[1]

### BACKGROUND

On January 3, 2007, appellee Linda Schuette ("appellee") filed an adversary complaint against appellants.  (Excerpts of Record ["ER"], K107-121.)  The complaint sought avoidance of two alleged fraudulent transfers of a condominium located in Long Beach, California, recovery of that condominium, turnover of estate property and related declaratory relief.  The first of the subject transfers was from Lebbos, as an individual, to Lebbos as Trustee of the Aida Madeline Lebbos No. 2 Trust (ER K118-120). The second transfer was from Lebbos as Trustee of the Aida Madeline Lebbos Trust II to Jason P. Gold and Thomas Carter as Trustees of the Aida Madeline Lebbos Trust II (ER K121).

After being served with the adversary complaint, appellants engaged in a litany of actions and activities designed to avoid substantive participation in the litigation, including numerous motions to dismiss, motions to transfer venue, motions to

---

[1]     Because the court finds that oral argument will not be of material assistance, it orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).  The court also notes that appellants expressly waived oral argument.  (See Docket #67.)

disqualify appellee as the Chapter 7 trustee in Lebbos' parent

bankruptcy case, motions to disqualify the bankruptcy judge, and

the refusal to participate in discovery.  Many of these actions

and activities were also engaged in by Lebbos in her parent

bankruptcy case both before and after the filing of appellee's

adversary complaint.  The specifics of these actions and

activities by appellants are thoroughly discussed in the

bankruptcy court's three memorandum decisions entering default

against appellants, and thus, the court will not repeat those

facts here.  (ER SSSS-1057-1101 [re: Lebbos]; ER NNN-680-710 [re:

Gold]; MM-466-491 [re: Carter].)  The facts are incorporated by

reference.

On November 28, 2007, appellee filed motions in the

adversary matter against appellants seeking sanctions pursuant to

Rule 37.  Appellee argued that sanctions were warranted based on

appellants' failure to appear at their properly noticed

depositions, their repeated failure to produce documents and

based on the court's prior warning that terminating sanctions may

be entered if appellants continued their conduct.  Appellee

requested either monetary or terminating sanctions.

The sanction motions were heard on January 16, 2008.  By

memorandum decisions of February 13, 20 and 21, 2008, the

bankruptcy court granted the motions, striking appellants'

answers and entering default against appellants as a terminating

sanction pursuant to Rule 37.  (Id.)  Appellee subsequently filed

an application for entry of default judgment, pursuant to those

decisions, and the bankruptcy court entered judgment against

appellants by orders of April 17, 2008.  (ER B-4-8; ER A-1-3.)

1

2                        **STANDARD OF REVIEW**

3        A terminating sanction, whether default judgment against a

4  defendant or dismissal of a plaintiff's action, entered pursuant

5  to Federal Rule of Civil Procedure 37,[2] is reviewed for abuse of

6  discretion.  <u>Conn. General Life Insur. Co. v. New Images of</u>

7  <u>Beverly Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007).  "Dismissal

8  is a harsh penalty and is to be imposed only in extreme

9  circumstances" involving "willfulness, bad faith and fault."

10 <u>Id.</u>; <u>In re Phenylpropanolamine (PPA) Prods. Liab. Litig.</u>, 460

11 F.3d 1217, 1226 (9th Cir. 2006) (internal quotations and

12 citations omitted).  However, a dismissal sanction should be

13 overturned only where the reviewing court has a "definite and

14 firm conviction that [the decision] was clearly outside the

15 acceptable range of sanctions."  <u>Toth v. Trans World Airlines</u>,

16 862 F.2d 1381, 1385 (9th Cir. 1988) (citations omitted).  The

17 issue is not whether this court would have, as an original

18 matter, imposed the sanctions chosen by the bankruptcy court but

19 whether that court exceeded the limits of its discretion.  <u>Id.</u>  A

20 determination that court orders were disobeyed is entitled to

21 considerable weight since the trial judge is best equipped to

22 assess the circumstances of the noncompliance.  <u>Id.</u>; <u>See also</u> <u>Rio</u>

23 <u>Properties, Inc. v. Rio International Interlink</u>, 284 F.3d 1007,

24 1021-22 (9th Cir. 2002).

25

26

27 ───────────────

28        [2]    Unless otherwise noted, all further references to a
   "Rule" are to the Federal Rules of Civil Procedure.

                                4

**ANALYSIS**

While appellants raise a multitude of issues in their briefs, the only issue properly raised on this appeal is the propriety of the bankruptcy court's entry of default judgment. Only that judgment is an appealable order properly considered by this court.  28 U.S.C. § 158(a)(1).[3]  More specifically, the singular issue presented by this appeal is the propriety of the bankruptcy court's entry of default judgment *as a terminating sanction* pursuant to Rule 37.  Both sides' briefs discuss the general standards for entry of default judgment under Rule 55, and whether under those standards the bankruptcy court's ultimate order entering judgment was supported by sufficient evidence and/or the well-pleaded allegations of the complaint.  See Cashco Financial Servs., Inc. v. McGee, 359 B.R. 764, 771-74 (9th Cir. BAP 2007).  However, that is not the proper inquiry.  Here, default judgment was entered as a sanction under the court's authority under Rule 37.[4]  Therefore, the court does not consider the parties' arguments addressing Rule 55 standards; its analysis herein is limited to whether the bankruptcy court's sanction of default judgment was within the "acceptable range of sanctions" for the conduct in this case.  Toth, 862 F.2d at 1385.

---

[3]   Thus, to the extent appellants' briefs raise other issues, this court has disregarded those arguments.

[4]   Rule 37(b)(2)(C) provides in pertinent part: "If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among other the following: (C) An order striking out pleadings or part thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

1    Before imposing the sanction of dismissal under Rule
2   37(b)(2), five factors must be considered: (1) the public's
3   interest in expeditious resolution of litigation; (2) the court's
4   need to manage its docket; (3) the risk of prejudice to the party
5   seeking sanctions; (4) the public policy favoring disposition of
6   cases on their merits; and (5) the availability of less drastic
7   sanctions.  <u>Toth</u>, 862 F.2d at 1385.  Within the fifth factor,
8   this court must consider whether the bankruptcy court considered
9   lesser sanctions, whether it tried them, and whether it warned
10  appellants about the possibility of case-dispositive sanctions.
11  <u>Conn. General Life</u>, 482 F.3d at 1096.  "This test, [however], is
12  not mechanical."  <u>Id.</u>  Rather, it is meant to provide the trial
13  court with a "way to think about what to do, not a set of
14  conditions precedent for sanctions or a script that the [trial]
15  court must follow[.]"  <u>Id.</u>

16   In this case, the bankruptcy court in three lengthy
17  memorandum decisions, one directed at each of the three
18  appellants, explicitly and thoroughly discussed each of these
19  five factors.  The court's extended discussion leaves no doubt
20  that there were ample grounds in this case to impose terminating
21  sanctions.  The court will specifically discuss some of the most
22  critical facts below which support the bankruptcy court's
23  decision.

24   However, it notes first, and more generally, that although
25  dismissal is a harsh penalty to be levied only in extreme
26  circumstances, the bankruptcy court was well within its
27  discretion in finding that such circumstances were present in
28  this case.  Ultimately, default judgment was entered against

appellants for their *continued* refusal to respond to requests to
produce documents--refusals which continued even after warnings
from the court as to the possibility of terminating sanctions.
Moreover, the record contains substantial evidence of protracted
and unjustified delays in responding to discovery requests and
non-compliance with judicial orders.  These facts which are
relevant to the factors of expeditious resolution of litigation,
docket management and prejudice clearly support the bankruptcy
court's decision to grant default judgment against appellants.
While the public policy favoring disposition on the merits weighs
against such entry of judgment, that single factor is not enough
to preclude imposition of this sanction when the other four
factors weigh so heavily in its favor.  See Rio Properties, Inc.,
284 F.3d at 1022.

     As to the first factor, the public's interest in the
expeditious resolution of litigation, the bankruptcy court
properly found that Lebbos' actions in this case and the parent
bankruptcy case were designed to delay the resolution of the
litigation, and that her actions were not supportive of the
prompt and inexpensive resolution of these disputes.  For
example, Lebbos, through a variety of tactics, stalled the
creditors meeting in the parent bankruptcy case for well over 19
months.  Additionally, the documents sought by appellee at
Lebbos' deposition in this adversary proceeding included
documents which appellee had originally requested prior to the
first creditors' meeting over a year and one-half prior to the
date set for Lebbos' deposition.  Thus, not only did Lebbos not
appear for her properly noticed deposition, she refused to

produce documents which were due over a year prior.   The
bankruptcy court found that at Lebbos' insistence, Gold and
Carter followed suit, failing to appear for their depositions and
refusing to produce subpoenaed documents.[5]

As to the second factor, the court's need to manage its
docket, the bankruptcy court correctly concluded that this factor
weighs heavily in favor of a terminating sanction.   Appellants
clogged the court's docket with duplicative motions, often times
filing simultaneous motions in the parent case and in this
adversary proceeding.   Lebbos' motions included two motions to
terminate the services of the Trustee and Trustee's counsel, two
motions to disqualify the judge, multiple motions to dismiss and
multiple motions to change venue.   Lebbos, the court found, was
the "strategist and quarterback" for the nearly identical motions
filed by Gold and Carter, which in some respect Lebbos drafted.
(ER SSSS-1081, 1091.)   All of these actions were part of
appellants' efforts to prevent the disclosure of information
legitimately sought by appellee.   In this case, dismissal served
the court's need to manage its docket because the "[appellants']
[conduct] . . . caused the action to [effectively] come to a
halt, thereby allowing [appellants], rather than the court, to
control the pace of the docket."   In re Phenylpropanolamine
Prods. Liab. Litig., 460 F.3d at 1234.

---

[5]     Appellants' suggestion that this case only involves
their failure to appear once at noticed depositions is wholly
unavailing.   This adversary matter is intertwined with the parent
bankruptcy case, and appellants' conduct in that case was
properly considered by the bankruptcy court in deciding whether
to enter terminating sanctions.

Regarding the third factor, the risk of prejudice to appellee, the law presumes prejudice from unreasonable delay, and the burden to show actual prejudice shifts to the party seeking the sanction only after the opposing party has established a non-frivolous reason for the delay.  <u>Hernandez v. City of El Monte</u>, 138 F.3d 393, 400-01 (9th Cir. 1998).  Here, in light of the facts as set forth above and more fully in the bankruptcy court's memorandum decisions, the bankruptcy court properly found appellants' excuses for their noncompliance with discovery requests and/or orders of the court were "deliberate, unjustifiable and in bad faith."  (ER SSSS-1092.)  Their failure to comply with legitimate requests for discovery drastically impaired appellee's ability to test the validity of appellants' defenses and ultimately to put on her case in this action.  As such, the bankruptcy court correctly held that this factor also weighed heavily in favor of a terminating sanction.  <u>See Valley Eng'rs v. Electric Eng'g Co.</u> 158 F.3d 1051, 1057 (9th Cir. 1998) (recognizing that what is most critical for case-dispositive sanctions is whether the discovery violations "threaten to interfere with the rightful decision in the case").

As to the fourth factor, the public policy favoring disposition of cases on their merits, generally weighs against a terminating sanction.

Finally, as to the fifth factor, the availability of less drastic sanctions, in this case the bankruptcy court justifiably concluded that no lesser sanction than dismissal would be effective.  The Ninth Circuit has recognized that the above factors provide simply "a way [for the court] to think about what

9

to do." <u>Conn. Gen. Life Ins. Co.</u>, 482 F.3d at 1096.  "They are
not a set of conditions precedent for sanctions or a script that
the . . . court must follow." <u>Id.</u>  Thus, it is not always
necessary for the court to impose serious sanctions first, or to
give any explicit warning.[6]  <u>Adriana Intern. Corp. v. Thoeren</u>,
913 F.2d 1406, 1413 (9th Cir. 1990).  Rather, the critical test
is whether the conduct of the party resisting discovery renders
it unlikely that the truth will come out.  <u>Valley Eng'rs</u>, 158
F.3d at 1058 (holding that a terminating sanction is appropriate
where "a party's discovery violations make it impossible for a
court to be confident that the parties will ever have access to
the true facts").

        In such circumstances, like those in this case, a court is
justified in concluding no lesser sanction than dismissal will be
effective.  <u>Id.</u>  The correctness of the bankruptcy court's
decision is most clearly seen by a review of a letter sent by
Lebbos to appellee's counsel on December 20, 2007.  Therein, she
simply refuses, yet again, and without any legal justification to
permit a properly noticed property inspection or to provide
verified responses to discovery or documents.  Instead of
accepting appellee's offer to resolve these disputes amicably,
she baldly refuses to comply and instead refers to her attempt to
have arrest warrants issued against appellee and her counsel,
stating that these "will end your involvement soon so that

_____

[6]     Here, the bankruptcy court expressly warned Lebbos that
if her conduct continued, terminating sanctions could be imposed.
The court did not make a similar warning directly to Gold and
Carter.  However, for the reasons set forth below, the lack of a
warning to them does render the entry of default judgment
improper.

anything further with you is unnecessary." (Appellee's Excerpts of Record, Ex. 4 at 17-19.)  The bankruptcy court properly concluded that Lebbos' conduct was "entirely inconsistent with any intention to cooperate in good faith with [appellee's] discovery requests." (ER SSSS-1096.)  Because Lebbos' drove the actions of Gold and Carter, the bankruptcy court also correctly determined that the same could be said of Gold and Carter's likelihood of noncompliance in the future.

In sum, as the court recognized in <u>Rio Properties, Inc.</u>, "sundry equitable arguments [designed] to escape the wrath of default judgment" are insufficient where appellants' "multiple transgressions" during this litigation and the underlying parent bankruptcy case demonstrate the propriety of the court's entry of default judgment as a sanction.  284 F.3d at 1022.  Under the rare and extreme circumstances of this case, the bankruptcy court acted well within its discretion in entering default judgment against appellants.

**CONCLUSION**

For the foregoing reasons, appellants' appeal of the bankruptcy court's entry of default judgment against them as a terminating sanction for discovery abuses is denied.  The bankruptcy court's decision to enter default judgment against each of the appellants is AFFIRMED.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: January 23, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

11